UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON WELLSANDT,<br><br>Defendant. | CR. 15-50008-JLV<br><br>ORDER ADOPTING REPORT AND<br>RECOMMENDATION |

## INTRODUCTION

Pending before the court is defendant Jason Wellsandt's motion to suppress evidence.  (Docket 12).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's scheduling and case management order (Docket 11), Magistrate Judge Daneta Wollmann held an evidentiary hearing and issued a report and recommendation.  (Docket 35).  The magistrate judge recommended Mr. Wellsandt's motion to suppress be denied in its entirety.  Id. at p. 13.  Mr. Wellsandt filed objections to the report and recommendation.  (Docket 40).  The government filed a response to Mr. Wellsandt's objections.  (Docket 41).

The court finds the magistrate judge's report and recommendation is an appropriate application of the law to the facts presented by the parties at the suppression hearing.  See United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001).  Defendant's objections are sustained in part and overruled in part, and the magistrate judge's report and recommendation is adopted subject to the noted factual amendment.

## THE DEFENDANT'S OBJECTIONS

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

## I.     MAGISTRATE JUDGE'S FINDINGS OF FACT

Mr. Wellsandt objects to the magistrate judge's findings of fact in one respect. Mr. Wellsandt disagrees with the magistrate judge's determination that the license plate for the 1969 Ford F250 pickup truck was run and identified as belonging to him. See Dockets 35 at p. 4 (report and recommendation); 40 at pp. 1-2 (defendant's objections).

The court sustains Mr. Wellsandt's factual objection. The government concedes it "did not identify any testimony specific to [the ownership of the 1969 Ford pickup at] the evidentiary hearing." (Docket 41 at p. 2). The parties do not dispute Mr. Wellsandt arrived near the 5247 Red Cliff Court residence, the location at which Mr. Wellsandt was known to be residing, driving a 1969 Ford pickup while law enforcement executed the first search warrant on the residence. (Docket 25 at pp. 43:19-44:5; 45:8-10; 45:25-46:18); see also HE 1

2

at p. 2; 15; 20-23.[1]  However, the parties presented no evidence demonstrating Mr. Wellsandt owned the 1969 pickup or that it was licensed in his name at the suppression hearing or in other filings.  Special Agent Steven Ardis of the South Dakota Division of Criminal Investigation ("DCI") in the affidavit in support of the second search warrant, which included the 1969 Ford pickup truck, averred Mr. Wellsandt drove the pickup to the location, but swore "the 1969 Ford F250 pickup was not registered to [Mr. Wellsandt], but rather was registered to Diane Hillestad and Lois Gribbin. . . [of] Rapid City, South Dakota." (HE 2 at p. 9).  Special Agent Ardis went on to explain that Ms. Huggins, who was living with Mr. Wellsandt, informed him "the 1969 Ford F250 is a family vehicle given on behalf of a deceased relative, but she knows and has witnessed [Mr.] Wellsandt have possession of and drive the vehicle for approximately one year."  Id.

The magistrate judge's finding that "the vehicle license plate was run and was identified as belonging to Mr. Wellsandt" is not supported by the record and Mr. Wellsandt's objection is sustained.  (Docket 35 at p. 4).[2]  However, this factual amendment does not invalidate the magistrate judge's legal analysis.

---

[1]The court references exhibits admitted at Mr. Wellsandt's suppression hearing as "HE."  The court includes specific page and section pincite information where necessary.

[2]This amendment to the magistrate judge's findings of fact does not alter the evidence indicating that Mr. Wellsandt was driving the pickup at the time of his arrest or the existence of evidence demonstrating he had been in possession of the pickup and had been regularly driving it.  See HE 2 at p. 9; 23.

II.     **MAGISTRATE JUDGE'S LEGAL CONCLUSIONS**

Mr. Wellsandt raises four objections to the magistrate judge's legal

conclusions.

> 1. Mr. Wellsandt objects to the magistrate judge's determination that
>    the black nylon bag was not located within the curtilage of the
>    trailer, but instead in an open field;
>
> 2. Mr. Wellsandt objects to the magistrate judge's determination that
>    he had no objectively reasonable expectation of privacy in the black
>    nylon bag;
>
> 3. Mr. Wellsandt objects to the magistrate judge's determination that
>    no Fourth Amendment violation occurred when the 1969 Ford
>    pickup was seized; and
>
> 4. Mr. Wellsandt objects to the magistrate judge's finding that the
>    second search warrant was valid.

(Docket 40 at pp. 2-3).

### 1.     **Curtilage or Open Field**

Mr. Wellsandt objects to the magistrate judge's determination the black

nylon bag was located in an open field and asserts the bag was located within

the curtilage of the trailer.  (Docket 40 at p. 2).  In support of this assertion,

Mr. Wellsandt relies on the proximity of the bag's location to the residence.  Id.

"The Fourth Amendment protects the curtilage of an individual's

residence, but not surrounding open fields."  United States v. Boyster, 436

F.3d 986, 991 (8th Cir. 2006) (citing Hester v. United States, 265 U.S. 57, 59

(1924).  "Curtilage is the area to which extends the intimate activity associated

with the sanctity of a man's home and the privacies of life, and is typically

comprised of land adjoining a house, often within some type of enclosure such

as a fence."  United States v. Mathias, 721 F.3d 952, 955 (8th Cir. 2013)

(internal quotation marks omitted) (quoting <u>Boyster</u>, 436 F.3d at 991)); <u>see also</u> <u>Oliver v. United States</u>, 466 U.S. 170, 180 (1984).  "For the purposes of the Fourth Amendment, an open field may be any unoccupied or undeveloped area outside of the curtilage and need be neither open nor a field as those terms are used in common speech."  <u>Mathias</u>, 721 F.3d at 955-56 (internal quotation marks and citations omitted).

In evaluating whether a particular area is curtilage, courts must determine "whether the area in question is so intimately tied to the home itself that [courts] should extend the Fourth Amendment's protection to it."  <u>Id.</u> at 956 (internal quotation marks and citations omitted).  "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself."  <u>United States v. Dunn</u>, 480 U.S. 294, 300 (1987) (citing <u>Oliver</u>, 466 U.S. at 180).  "These factors are 'the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.'" <u>Mathias</u>, 721 F.3d at 956 (quoting <u>Dunn</u>, 480 U.S. at 301).  "[T]he central component of this inquiry [is] whether the area harbors the 'intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" <u>Dunn</u>, 480 U.S. at 300 (quoting <u>Oliver</u>, 466 U.S. at 180).

Contrary to Mr. Wellsandt's assertions, the proximity of the black nylon sunglass bag to the trailer house is not dispositive of the court's curtilage

analysis.  The bag was located approximately 9 feet to 20 feet from the trailer.[3]
The bag was not located in an area included within an enclosure or fence
surrounding the home.   The opposite is true as the bag was located outside of
the railroad ties.  See HE 13.  The railroad ties appear to create a landscaped
border separating the grassy area immediately adjacent to the trailer, which
contained a tree and an electrical box, from a gravel road and parking area.
See HE 8-11.

    The area in which the bag was located appears to be primarily used as a
space for motorized travel or parking along Red Cliff Court and for pedestrian
traffic in and out of the trailer.  The bag was found in an area lined with vehicle
tire tracks.  See HE 9 & 10 (The "X" on exhibits 9 and 10 marks the location
where Officers Nasser and Humphrey, respectively, claim to have found the
bag.).  The area was also commonly traversed by pedestrians when entering the
front porch of the trailer from the roadway.  See HE 15 (The video recording
shows Officers Humphrey and Nasser finding the bag while walking on the
gravel path leading away from the trailer's front porch.).  Finally, Mr. Wellsandt
took no steps to shield the area from the view of people passing by.  See HE 15

---

[3]Officers Humphrey and Nasser estimated the bag was approximately 20
feet from the trailer house.  (Docket 25 at pp. 28:21-29:24; 51:21-52:9).
Jessica Thomas, the paralegal for Mr. Wellsandt's attorney, measured the
distance from the corner of the trailer to the intersection of the nearby railroad
ties and reported the distance was only 9 feet.  (Docket 25 at pp. 68:7-69:17);
see also Docket 25 at p. 29:19-24 (Officer Humphrey asserted the bag was over
a foot away from the railroad ties.); HE 9-10 (containing an "X" indicating
where the bag was found in relation to the trailer); 13 (A screen shot of Officer
Humphrey's video identifying where the bag was found in relation to the
railroad ties.).  Irrespective of whether the bag was located 9 feet or up to 20
feet from the trailer, under the facts of this case, the court's conclusion is the
same.  The bag was found in an open field.

(The officers readily found the black nylon bag at night while walking along the gravel pathway.); see also HE 10.

The court, having weighed the Dunn factors, agrees with the magistrate judge that the black nylon bag was not located within the curtilage of the trailer house but rather in an open field. (Docket 35 at p. 10). Defendant's objection is overruled.

### 2.    Expectation of Privacy

Mr. Wellsandt asserts he has "an expectation of privacy in an area so close to his residence [which] includes any items found in that area as it is curtilage." (Docket 40 at p. 2). The court already determined the nylon bag was not located in the curtilage of the trailer but rather in an open field.

"Fourth Amendment protections for people in their persons, houses, papers, and effects do not extend to the open fields, and individuals have no legitimate expectation that open fields will remain free from warrantless intrusion by government officers. . . . Police officers thus may enter and search an open field without a warrant." United States v. Castleman, 795 F.3d 904, 913 (8th Cir. 2015) cert. denied, No. 15-7303, 2016 WL 207385 (U.S. Jan. 19, 2016) (internal quotation marks and brackets omitted) (quoting Oliver, 466 U.S. at 173, 176).

Mr. Wellsandt does not have standing to challenge the officers' search of the nylon bag after they discovered it. "In order to have standing to challenge a search or seizure under the Fourth Amendment, the defendant must have a legitimate expectation of privacy in the places or objects searched." United

7

States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994). "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched." United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994) (citations omitted). In determining whether a person has a legitimate expectation of privacy, the court applies a two-part test "(1) whether the [defendant] has asserted a subjective expectation of privacy, and (2) whether the [defendant's] subjective expectation is objectively reasonable." Stallings, 28 F.3d at 60 (citations omitted). "The first part of the test is a question of fact that [the United States Court of Appeals for the Eighth Circuit] review[s] under a clearly erroneous standard, while the second part is a question of law, dictating de novo review." Id. (quoting United States v. Kiser, 948 F.2d 418, 423 (8th Cir. 1991).

To meet the first part of the test, Mr. Wellsandt must demonstrate that by his conduct, he sought to preserve the nylon bag as private. Id. at 60 (citations omitted). Mr. Wellsandt failed to make this showing. The black nylon bag was left in an open field without any indicia of ownership. Mr. Wellsandt introduced no evidence of his possession or control over the nylon bag, his historical use of the bag or his ability or attempts to regulate access to the bag.[4] Id. at 60-61. Officer Humphrey testified that the nylon bag belonged to Albert Nagel, who dropped the bag where the officers found it. (Docket 25 at p. 30:7-10). Mr. Wellsandt failed to establish a subjective expectation of privacy in the nylon bag.

---

[4]This is not surprising as the defendant acknowledges the nylon bag contained crystal methamphetamine. (Docket 13 at p. 1).

Even if the court assumed Mr. Wellsandt had a subjective expectation of privacy in the nylon bag, this expectation was not objectively reasonable. The nylon bag was left unattended on a gravel pathway, exposed to the public, and it contained no indicia of ownership. Any subjective expectation of privacy held by Mr. Wellsandt was not objectively reasonable. See Stallings, 28 F.3d 61 (The Eighth Circuit held "even the theoretical possibility that animals, children, scavengers, snoops, and other members of the public would happen onto an item was sufficient to make a defendant's expectation of privacy unreasonable.") (internal quotation marks and citations omitted). The court finds Mr. Wellsandt did not have an objectively reasonable expectation of privacy in the black nylon bag and, therefore, his Fourth Amendment rights were not violated. Defendant's objection is overruled.

### 3. Impoundment of the Pickup Truck

Mr. Wellsandt objects to the magistrate judge's determination that the impoundment of the 1969 Ford pickup truck was not a Fourth Amendment violation. Mr. Wellsandt asserts the impoundment was unlawful because the pickup was not listed on the first search warrant which was being executed on the trailer at the time of Mr. Wellsandt's arrest. (Docket 40 at pp. 2-3).

> Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.
>
> . . . .

9

> [U]nder these circumstances, the risk of the item's disappearance
> or use for its intended purpose before a warrant may be obtained
> outweighs the interest in possession.

United States v. Place, 462 U.S. 696, 701-02 (1983) (citations omitted).

In United States v. Smith, the Eighth Circuit held the seizure of a laptop bag was justified in order to preserve evidence where law enforcement agents had probable cause to believe the bag contained evidence of a crime.  715 F.3d 1110, 1117 (8th Cir. 2013).  In United States v. Clutter, the Eighth Circuit upheld the seizure of a defendant's computers while officers applied for a search warrant on multiple grounds, including that the officers had "probable cause to believe the computers contained evidence of child pornography offenses."  674 F.3d 980, 985 (8th Cir. 2012).  The Sixth Circuit, in upholding a warrantless seizure of a suitcase while law enforcement officers obtained a search warrant, noted "[t]his was a plain old-fashioned seizure of a person's effects, based on probable cause, in order to prevent the disappearance of evidence and so that a warrant could be obtained and a search conducted." United States v. Respress, 9 F.3d 483, 486 (6th Cir. 1993).

Mr. Wellsandt arrived near his residence at 5247 Red Cliff Court driving a 1969 Ford pickup truck while law enforcement executed a search warrant on the residence.  See supra Part 1 at p. 2.  Law enforcement arrested Mr. Wellsandt upon his arrival at the location shortly after 8 a.m. on December 6, 2014.  (Docket 25 at pp. 83:25-84:2).  Mr. Wellsandt "looked like he had been out all night"; "[h]is eyes were bloodshot and watery"; and "[h]e was very sweaty."  (Docket 25 at pp. 44:25-45:4).  Officer Nasser, based on his training

10

and experience, concluded Mr. Wellsandt might be under the influence of something.  Id. at 45:5-7.

As a result of the search of Mr. Wellsandt's trailer, law enforcement discovered over $1,500 in United States currency, a stolen black handgun loaded with a magazine, methamphetamine and a plethora of drug paraphernalia.[5]  See HE 2 at p. 8.  These findings were in addition to the black nylon bag containing crystal methamphetamine and Mr. Nagel's pipe that the officers found the night before.

Under these circumstances, probable cause existed that the 1969 Ford pickup truck contained evidence of a controlled substance offense or contraband, and its seizure was necessary to preserve evidence.  Law enforcement's seizure of the pickup pending the issuance of a warrant to search its contents was not constitutionally unreasonable.  After impounding the pickup on December 6, 2014, law enforcement waited to search it until after receiving a search warrant on December 9, 2014.  See Docket 25 at pp. 59:19-62:5; see also HE 2.  During this search, law enforcement found the firearm which is the basis of Mr. Wellsandt's federal indictment.  See Docket 1; see also HE 25-28.  Mr. Wellsandt's Fourth Amendment rights were not violated by the seizure of the 1969 Ford pickup truck pending the issuance of a search warrant.  Mr. Wellsandt's objection is overruled.

---

[5]The drug paraphernalia included:  two pipes with residue, a scale with residue and a digital scale, a bong, a syringe tray with needles, a glass vile with methamphetamine, a pencil and butane torch, a ledger with names and phone numbers, a hypodermic syringe, a burned marijuana cigarette, and a box containing syringes, a spoon and filter.  See HE 1 at pp. 7-11.

### 4.      The Validity of the Warrant to Search the Pickup Truck

Mr. Wellsandt objects to the magistrate judge's conclusion that the warrant to search the 1969 Ford pickup truck is valid.  Mr. Wellsandt asserts the affidavit in support of the search warrant is based on illegally obtained information and the search warrant is therefore invalid as it is based on fruit of the poisonous tree.  (Docket 40 at p. 3).  Having overruled all of Mr. Wellsandt's specific objections asserting Fourth Amendment violations, the court rejects Mr. Wellsandt's general contention that the search warrant for the 1969 Ford pickup truck was based on illegally obtained information and, therefore, constitutes fruit of the poisonous tree.

Even if a Fourth Amendment violation occurred, the evidence obtained as a result of the second search warrant falls within the Leon good-faith exception to the Fourth Amendment's exclusionary rule.  "[T]he Fourth Amendment exclusionary rule should not be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid. . . ."  United States v. Taylor, 119 F.3d 625, 629 (8th Cir. 1997) (citing United States v. Leon, 468 U.S. 897, 905 (1984).[6]  Mr. Wellsandt's objection is overruled.

### ORDER

After conducting a *de novo* review of the entire record, it is

---

[6]The defendant has not asserted the second search warrant is within one of the four circumstances where the Leon good-faith exception does not apply. See Taylor, 119 F.3d at 629.

ORDERED that the defendant's objections (Docket 40) are sustained in part and overruled in part consistent with the court's analysis.

IT IS FURTHER ORDERED that the report and recommendation of Magistrate Judge Wollmann (Docket 35) is adopted subject to the factual amendment noted above.

IT IS FURTHER ORDERED that the defendant's motion to suppress (Docket 12) is denied.

IT IS FURTHER ORDERED that a scheduling order setting Mr. Wellsandt's case for trial will follow.

Dated April 27, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE